IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SUNSTONE ENGINEERING, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>PEPE TOOLS INC., an Oklahoma corporation, d/b/a PEPETOOLS, INC.,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-cv-00334-RJS-CMR<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is Defendant Pepe Tools, Inc.'s (Pepetools) Motion to Transfer Venue.[1] Having reviewed the Motion and all associated briefing, the court GRANTS the Motion.

## BACKGROUND

This action relates to Pepetools' alleged infringement of Plaintiff Sunstone Engineering, LLC's (Sunstone) intellectual property.

Sunstone is a Utah limited liability company with its principal place of business in Utah.[2] Sunstone develops, manufactures, distributes, and sells micro-welding technologies and products tailored to multiple industries, including the permanent jewelry industry.[3] For context, permanent jewelry refers to a piece of jewelry, commonly a bracelet or necklace, that is secured by welding two ends of the piece together, rather than by using a clasp,[4] and a specialized micro-

---

[1] Dkt. 48, *Defendant's Motion to Transfer Venue and Memorandum in Support* (*Motion*).

[2] *See* Dkt. 44, *Second Amended Complaint* ¶ 4.

[3] *Id.* ¶ 13.

[4] *Id.* ¶ 14.

welding device is often used to create the weld that secures a piece of permanent jewelry.[5] Since at least December 2019, Sunstone has maintained a website that houses certain Terms and Conditions (the Terms).[6] These Terms purportedly bind all buyers of Sunstone's goods, though Sunstone describes the Terms as a "browesewrap agreement," suggesting customers are not required to view or assent to the Terms when making a purchase from Sunstone's website.[7]

Pepetools is an Oklahoma corporation with its primary place of business in Oklahoma.[8] It manufactures and distributes micro-metal forming tools, including permanent jewelry welders.[9] In 2020, Pepetools entered the permanent jewelry market and established a distribution relationship with Sunstone, whereby Pepetools offered Sunstone's permanent jewelry welders for sale to Pepetools' existing customer base.[10] However, in January 2023, the parties were unable to reach an agreement on the terms of a Distribution Agreement and Intellectual Property Use Agreement proposed by Sunstone.[11] The parties thereafter ended their distributor relationship,[12] and Pepetools began offering its own permanent jewelry welders for sale.[13] It is Pepetools's launch and sales of a competing micro-welding device—the Helix—that

---

[5] *Id.*

[6] Dkt. 52-3, *Declaration of Andy Jensen* ¶ 4; Dkt. 52-4, *Terms and Conditions*.

[7] *Opposition* at 9 ("Sunstone's Terms and Conditions constitute a . . . 'browsewrap' agreement.").

[8] *Id.* ¶ 5; *Motion* at 1 (citing Dkt. 49, *Declaration of David Aizenman in Support of Defendant Pepe Tools, Inc.'s Motion to Transfer Venue* (*Aizenman Decl.*) ¶ 3).

[9] *Aizenman Decl.* ¶¶ 4–5.

[10] *Id.* ¶ 9.

[11] *Id.* ¶¶ 13–18.

[12] *See* Dkt. 52, *Opposition to Defendant's Motion to Transfer Venue and Memorandum in Support* (*Opposition*) at 3.

[13] *Aizenman Decl.* ¶ 21.

is the focus of this lawsuit.[14] Sunstone alleges the Helix employs many of Sunstone's trademarks.[15]

In October 2023, after Sunstone accused it of infringing its intellectual property, Pepetools filed a lawsuit in the Western District of Oklahoma seeking a declaratory judgment of non-misappropriation of trade secrets, breach of contract, violation of the Oklahoma Deceptive Trade Practices Act, and violation of Oklahoma Statutes regarding prohibited communications related to patent infringement.[16] In May 2024, Sunstone brought this action in the District of Utah and asserted the following claims against Pepetools:

1. Federal Trademark Infringement under 15 U.S.C. § 1125(a);

2. Federal Unfair Competition and False Designations of Origin and False and Misleading Representations under 15 U.S.C. § 1125(a);

3. Federal Trademark Dilution under 15 U.S.C. § 1125(c);

4. State Trademark Dilution under Utah Code § 70-3a-403;

5. State Unfair Competition under Utah Code § 13-5a-101 et seq.;

6. State Deceptive Trade Practices under Utah Code § 13-11a-1 et seq.;

7. Utah Common Law Trademark Infringement; and

8. Utah Common Law Unfair Competition.[17]

This action originally related to only Defendant's alleged infringement of two of Sunstone's pieces of intellectual property: a PERMANENT JEWELRY WELDER trademark, and the trade

---

[14] *See Opposition* at 2–3.

[15] *Id.*

[16] Dkt. 48-1, *Case No.: CIV-23-907-D Demand for Jury Trial* ¶¶ 42–80.

[17] Dkt. 2, *Complaint* ¶¶ 56–140.

dress of a stylus or grip of Sunstone's micro welder.[18] But after this court denied Sunstone's Motion for Temporary Restraining Order, Sunstone amended its Complaint and added allegations that Pepetools infringed three additional trademarks: the Orion Mark, the Sunstone Mark, and the mPulse mark.[19] Sunstone also added additional claims for contributory trademark infringement and cybersquatting under Utah and federal law.[20]

Pepetools filed the present Motion in November 2024 seeking to transfer this case to the Western District of Oklahoma, where its original action is still outstanding.[21] The Motion is fully briefed and ripe for review.[22]

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a district may transfer an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice, . . . to any other district or division where it might have been brought." Ordinarily, a motion to transfer under § 1404(a) requires a district court to "evaluate both the convenience of the parties and various public-interest considerations."[23] Courts often consider the following discretionary factors:

> [1] the plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court

---

[18] *Id.* ¶ 2.

[19] *See Second Amended Complaint* ¶¶ 38–40, 54–56.

[20] *Id.* ¶¶ 182–223.

[21] *See Motion*.

[22] *See Opposition*; Dkt. 53, *Defendant's Reply in Support of Motion to Transfer Venue* (*Reply*).

[23] *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).

4

determine questions of local law; and [9] all other considerations of a practical nature that make a trial easy, expeditious and economical."[24]

Ultimately, a district court has broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"[25]

But when the decision to transfer involves a valid forum-selection clause, the standard changes in three ways. "First, the plaintiff's choice of forum merits no weight . . . [and] the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."[26] Second, the court does "not consider arguments about the parties' private interests," and the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." [27] Third, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules . . . ."[28] Notably, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be" used to escape the preselected forum.[29]

---

[24] *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (citing *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).

[25] *Chrysler Credit Corp.*, 928 F.2d at 1516 (citing *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

[26] *Atlantic Marine Const. Co., Inc.*, 571 U.S. at 63.

[27] *Id.* at 64.

[28] *Id.*

[29] *Id.* at 62.

## ANALYSIS

Pepetools, as the party "bear[ing] the burden of establishing that the existing forum is inconvenient,"[30] argues the ordinary venue factors weigh in favor of transfer.[31]  In response, Sunstone argues, among other things, the parties entered into a valid forum-selection clause pursuant to a "browsewrap" agreement, which designated Utah federal court as the proper forum for this lawsuit.[32]  Pepetools contends it never assented to the terms of the browsewrap agreement, and it points to the earlier-filed case in the Western District of Oklahoma where a district judge found these Terms on Sunstone's website could not be enforced against Pepetools.[33]

The court first addresses the threshold issue of whether the parties agreed to a forum-selection clause.  Finding they did not, and because Sunstone makes no other arguments that it could not have brought this case in the Western District of Oklahoma in the first instance,[34] the court then analyzes the venue factors described above.  Of the above-mentioned factors, the parties agree there is no significant difference between the two districts regarding the ability of the parties to receive a fair trial and any conflicts of law.  Accordingly, the court addresses only

---

[30] *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (citation omitted).

[31] *See generally Motion*.

[32] *See Opposition* at 8–11.

[33] *Reply* at 4–8; *Pepe Tools, Inc. v. Sunstone Eng'g, LLC*, No. CIV-23-907-D, 2024 WL 3263844 (W.D. Okla. July 1, 2024).

[34] Besides attempting to enforce the forum-selection clause, Sunstone does not dispute Pepetools' arguments that "[t]his case could . . . have been brought in the Western District of Oklahoma . . . in the first instance," and "[p]roper venue has already been established in the WDO in a prior action . . . ."  *See Motion* at 4; *see also Pepe Tools, Inc.*, 2024 WL 3263844, at *8–9 (finding proper venue had been established in the Western District of Oklahoma).

the remaining factors to determine whether the case should be transferred for fairness and convenience.[35]

### I. The Forum-Selection Clause

Sunstone claims certain "Sales Quotations, when acknowledged by Pepetools, together with the Terms and Conditions formed the entire agreement between the parties for their transactions."[36] These Terms contain, among other things, a forum-selection clause designating Utah as the proper forum for "any dispute . . . arising out of or relating to" the Terms.[37] In attempting to subject Pepetools to the Terms, Sunstone points to a Declaration by Corbin Worthen where he explained how "purchase orders with Pepe Tools [were] often conducted via email correspondence."[38] Mr. Worthen includes a sample email invoice sent to Pepetools in his declaration.[39] Critically missing from this email and invoice, however, is any reference to Sunstone's Terms. Sunstone later clarifies in its briefing it seeks to extend the Terms to Pepetools by arguing the Terms constitute a "browsewrap" agreement. More specifically,

---

[35] The court is not persuaded by Sunstone's arguments that (1) Pepetools unreasonably delayed in bringing this Motion, and (2) the court already implicitly determined that Utah is the more appropriate forum for this action by analyzing the First-to-File Rule. *See Opposition* at 5–7. Regarding the first argument, the court issued its Scheduling Order on September 3, 2024, and Pepetools moved to transfer on November 29, 2024. *See* Dkt. 47, *Scheduling Order*. At the time of filing this Motion, no depositions had been set, no third-party subpoenas had been issued, and there were over six months left to complete fact discovery. The court finds Pepetools has not been dilatory with respect to the filing of its Motion as it was filed before the parties were actively litigating and conducting discovery. With respect to the second argument, the First-to-File Rule is governed by an entirely different standard than a motion brought under 28 U.S.C. 1404(a). In fact, at the hearing discussing the First-to-File Rule, the court indicated how it was likely that "everybody [would be] better off if you were in one court," notwithstanding the Rule. Dkt. 36, *Motion Hearing* at 61.

[36] *Opposition* at 8.

[37] *Terms and Conditions* ¶ 24.

[38] *Declaration of Corbin Worthen* ¶ 13.

[39] *Id.* at 16.

7

Sunstone argues Pepetools should be bound by the Terms due to Pepetools' awareness of the Terms' existence and Pepetools' ongoing willingness to purchase goods from Sunstone.[40]

While the Tenth Circuit has not yet opined on the enforceability of browsewrap agreements, basic principles of contract law provide "[t]here can be no contract absent 'a manifestation of assent to an offer, such that an objective, reasonable person is justified in understanding that a fully enforceable contract has been made.'"[41] Even in the age of the internet, mutual manifestation of assent is essential in contract formation. And in the context of online consumer agreements, this court has clarified,

> [c]ourts have generally recognized four types of online consumer agreements: clickwrap, scrollwrap, sign-in wrap, and browsewrap. Clickwrap agreements require a user to agree to the terms and conditions before using a website or application . . . [and they] are generally enforceable agreements. Scrollwrap agreements require users to scroll through an online agreement and then click "I agree" to the terms. With sign-in-wrap agreements, users generally consent to the terms when they sign into an account or sign up for use of the site's services. With browsewrap agreements, the terms are documented somewhere on a retailer's website and purported to apply to a user by virtue of accessing that website or platform. To determine whether sign-in-wrap and browsewrap agreements are enforceable, courts engage in fact-intensive inquiries of the layout and language of a website or application.[42]

Sunstone asks the court to follow the Second Circuit's approach to determine the binding effect of the browsewrap agreement by analyzing "whether the user has actual or constructive knowledge of a website's terms and conditions,"[43] which would involve a fact-intensive inquiries of the layout and language of a website or application.[44] But the court does not reach

---

[40] *Opposition* at 8–11.

[41] *Koch Indus., Inv. v. Does*, No. 2:10CV1275DAK, 2011 WL 1775765, at *9 (D. Utah May 9, 2011) (citing *Cal Wadsworth Const. v. City of St. George,* 898 P.2d 1372, 1376 (Utah 1995) and Restatement (Second) of Contracts § 19(2) (1981)).

[42] *Route App, Inc. v. Heuberger*, No. 2:22-CV-291-TS-JCB, 2022 WL 2316377, at *3 (D. Utah June 28, 2022) (citations omitted).

[43] *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) (citation omitted).

[44] *Route App, Inc.*, 2022 WL 2316377, at *3 (citations omitted).

this fact-intensive analysis.  Critically missing from Sunstone's briefing is any argument or allegation that Pepetools used Sunstone's website to purchase and resell Sunstone's products.[45] In fact, Sunstone clarifies how "purchase orders with Pepe Tools [were] often conducted via email correspondence,"[46] not via Sunstone's website.  Inferring a party's assent to a "browsewrap" agreement would at least require that party's use of the website housing the agreement.[47]

Still, Sunstone focuses on three facts to demonstrate Pepetools' awareness of the Terms: (1) the Terms were available on Sunstone's website for the duration of the parties' relationship; (2) Sunstone "directed Pepetools' attention to the Terms on multiple occasions"; and (3) Sunstone emailed Pepetools excerpts of the Terms.[48]  But awareness in the context of a browsewrap agreement, without more, does not constitute assent.  The court is aware of no legal authority extending a "browsewrap" theory of assent to a party who never used the website housing the purported agreement.  Thus, these allegations of awareness do not demonstrate Pepetools manifested its assent to the purported browesewrap agreement.

---

[45] Notably, Sunstone's Terms purport to bind only those "buyer[s] identified in the Sales Quotation and/or Acknowledgment [of a sale order] . . . to which these Terms are attached or incorporated by reference."  Dkt. 52-4, *Terms and Conditions* ¶¶ 1–2.  And here, the parties point to no evidence that these Terms were incorporated into any agreement related to their distribution relationship, *see Aizenman Decl.* ¶ 12, nor does Sunstone argue for incorporation of the Terms by reference.

[46] *Declaration of Corbin Worthen* ¶ 13.

[47] *See, e.g.*, *Route App, Inc.*, 2022 WL 2316377, at *3 ("With browsewrap agreements, the terms are documented somewhere on a retailer's website and purported to apply to a user by virtue of accessing that website or platform."); *Meyer*, 868 F.3d at 75 ("Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website, the determination of the validity of the browsewrap contract depends on whether the *user* has actual or constructive knowledge of a website's terms and conditions." (emphasis added) (citations omitted)).

[48] *Opposition* at 10.

To the extent Sunstone argues Pepetools was on inquiry notice of the Terms based on representations by Sundance employees, that argument does not align with Sunstone's proposed theory of assent. Inquiry notice "in the context of web-based contracts" turns on the "design and content of the relevant interface."[49] In other words, "[w]hether a user has inquiry notice of a browsewrap agreement . . . depends on the design and content of the website and the agreement's webpage," not on prior oral representations or emails discussing the browsewrap."[50] But regardless, Sunstone's representations about its Terms did not provide Pepetools with actual or constructive notice of the Terms.[51] For example, Sunstone cites to an affidavit from Corbin Worthen (a Sunstone account manager) who insists he directed David Aizenman (an owner of Pepetools) to the Terms "on multiple occasions . . . when David asked questions about . . . warranty coverage."[52] Similarly, Adam Carlson (a customer support manager) communicated with David Aizenman "on multiple occasions regarding warranties and repairs for products" that Pepetools had ordered from Sunstone.[53] Carlson also sent Aizenman an email with part of the warranty section of the Terms pasted in the body of the email.[54] But it is more likely Pepetools understood these various representations about warranty provisions as governing the relationship between Sunstone and the end consumer, particularly when the above-cited communications involved Pepetools' efforts to direct consumers with complaints back to a Sunstone

---

[49] *Meyer*, 868 F.3d at 75.

[50] *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

[51] Sunstone cites to Utah law to define inquiry notice as follows: "[I]nquiry notice occurs when circumstances arise that should put a reasonable person on guard so as to require further inquiry on his part." *Opposition* at 9–10 (citing *Muir v. Wasatch Front Waste & Recycling Dist.*, 547 P.3d 863, 868 (UT App. 2024)).

[52] Dkt. 52-5, *Declaration of Corbin Worthen* ¶¶ 3-5.

[53] Dkt. 52-6, *Declaration of Adam Carlson* ¶ 2.

[54] *Id.* ¶ 6.

representatives to take advantage of Sunstone's warranty.[55] Ultimately, as there are no allegations suggesting Pepetools ever used the website nor assented to its Terms, the court concludes the forum-selection clause has no effect on the issue of whether to transfer venue.

## II.    Plaintiff's Choice of Forum

The court now turns to the remaining relevant venue factors mentioned above. The first is Plaintiff's choice of forum. "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum-should rarely be disturbed."[56] However, "[c]ourts . . . accord little weight to a plaintiff's choice of forum 'where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum.'"[57] Persuasive authority suggests a "plaintiff's choice of forum is also entitled to less deference where a related action is pending in a different forum, although this principle is generally limited to instances where the action in the prospective transferee court was filed first and the subject matters of the two suits are very closely related."[58]

Here, Pepetools argues the court should accord little weight to Sunstone's choice of forum because Sunstone's allegations in its Second Amended Complaint focus almost exclusively on Pepetools' activities in Oklahoma, not Utah.[59] Sunstone disagrees and contends its allegations focus on events that occurred:

> (1) in Utah, including the parties' relationship, the development of Sunstone's trademarks, and Sunstone's damages; (2) in Utah and beyond Oklahoma, including

---

[55] *See, e.g.*, *Declaration of Adam Carlson* at 5–15.

[56] *Employers Mut. Cas. Co.*, 618 F.3d at 1167 (citation omitted).

[57] *Id.* (citation omitted).

[58] *Buckeye Pennsauken Terminal LLC v. Dominique Trading Corp.*, 150 F. Supp. 3d 501, 509 (E.D. Pa. 2015) (citation omitted).

[59] *Motion* at 5.

consumer confusion; and (3) online, where evidence of much of Pepetools' infringement has already been provided by Sunstone in its complaint.[60]

Courts recognize that "'[i]ntellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions."[61] Indeed, in the context of intellectual property infringement, this court has recognized how the forum where the "allegedly infringing activity is occurring" has a "much stronger connection to the operative facts of the lawsuit" than others.[62] And here, Pepetools' conduct complained of by Sunstone occurred in Oklahoma.[63] Pepetools' only office is in Oklahoma; all of its employees are located in Oklahoma; it designed the allegedly infringing Helix in Oklahoma; and it engaged in all of the other conduct of which Sunstone accuses it while in Oklahoma.[64] Moreover, as will be explained in greater detail below, Sunstone brought this action after Pepetools had filed a related lawsuit in Oklahoma. The substantial factual overlap between the two cases suggests it is actually Sunstone who has sought to deprive Pepetools of its choice of forum to litigate issues related to its distribution of micro-metal forming tools. This combined with the fact that the most significant facts giving rise to the present dispute do not relate to Utah leads the court to give less deference to Sunstone's later-

---

[60] *Opposition* at 7.

[61] *Houston Trial Reps., Inc. v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999) (citing *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. P'ship,* 807 F. Supp. 470 (N.D.Ill.1992) and *Anadigics, Inc. v. Raytheon Co.,* 903 F. Supp. 615 (S.D.N.Y.1995)).

[62] *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1206 (D. Utah 2014).

[63] *Reply* at 8.

[64] *See Reply* at 8–9 (citing *Aizenman Decl.*).

selected forum.[65] Still, Sunstone is "at home" in Utah, and the court accords some weight to Sunstone's desire to litigate at home.[66] Thus, on balance, this factor is neutral.

### III. Accessibility of Witnesses and Sources of Proof

"The convenience of witnesses is the most important factor in deciding a motion under § 1404(a),"[67] and the availability and convenience of key witnesses with material testimony may outweigh the convenience of numerous, but less important witnesses.[68] "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of the[ir] testimony'; and (3) 'show[ ] that any such witnesses were unwilling to come to trial . . . [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary.'"[69] But "[t]he ability to compel the attendance of witnesses is generally relevant only to third-party witnesses, because employees of the parties, as a practical matter, will be available in any venue by virtue of the employment relationship."[70]

Here, all material witnesses appear to be employees or officers of the parties, not third-party witnesses. Indeed, Pepetools insists the most knowledgeable and material witnesses related to Pepetools' alleged trademark infringement are "Oklahoma-based officers and employees of Pepetools" as described in its initial disclosures.[71] Sunstone responds by identifying three, third-party witnesses with potentially material testimony: Corbin Worthen, Kevan Hale, and Brittany

---

[65] *See Buckeye Pennsauken Terminal LLC*, 150 F. Supp. 3d at 509 (gathering citations).

[66] *See Houston Trial Reps., Inc.*, 85 F. Supp. 2d at 668.

[67] *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (citation omitted).

[68] *See id.*; *Navajo Nation v. Urb. Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1257 (D.N.M. 2013).

[69] *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (citations omitted) (alterations in the original).

[70] *Navajo Nation*, 918 F. Supp. 2d at 1257 (citations omitted).

[71] *Motion* at 6–7.

Mormann.[72] These witnesses purportedly reside in Utah, and Sunstone seeks to call them to be material "witnesses about the Terms and Conditions," described above.[73] But this court and the Western District of Oklahoma are in agreement that Pepetools is not bound by the Terms.[74] These witnesses, therefore, are not material—at least as to the issue identified by Sunstone. And again, "'[i]ntellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore the location of the alleged infringer's principal place of business is often the critical and controlling consideration' in adjudicating transfer of venue motions."[75] Witnesses with knowledge of these significant facts are the most material to this case, and they all reside in Oklahoma.

Still, Pepetools has not demonstrated inability to obtain needed testimony from third-party material witnesses if the case remains in Utah, and such a witness apparently does not exist. Most of the material witnesses in this case are employees of Pepetools and are located in Oklahoma. And "as a practical matter, [they] will be available in [either] venue by virtue of the employment relationship."[76] Thus, the court concludes that, on balance, this factor is neutral.

## IV.   Enforceability of a Judgment

While Pepetools argues any judgment would have to be enforced against it in Oklahoma, this does not create an issue related to the enforceability of a judgment to warrant transfer of venue. Indeed, 28 U.S.C. § 1963 allows for registration and enforcement of a District of Utah judgment in the Western District of Oklahoma, and such a judgment has "the same effect as a

---

[72] *See Opposition* at 12.

[73] *Id.*

[74] *See Pepe Tools, Inc. v. Sunstone Eng'g, LLC*, No. CIV-23-907-D, 2024 WL 3263844, at *8 (W.D. Okla. July 1, 2024).

[75] *Houston Trial Reps., Inc.*, 85 F. Supp. 2d at 668 (citations omitted).

[76] *Navajo Nation*, 918 F. Supp. 2d at 1257 (citations omitted).

14

judgment of the district court of the district where registered and may be enforced in like manner."[77]  Thus, this factor is neutral.

### V.  Difficulties Arising from Congested Dockets

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[78]  Each one of these metrics reveals the Western District of Oklahoma has a substantially less congested docket than the District of Utah.[79]  Accordingly, this factor weighs in favor of transfer.

### VI.  Cost of Making Necessary Proof

As will be explained in more detail below, the cases pending in the District of Utah and Western District of Oklahoma are substantially similar, and the disclosed witnesses in each case are nearly identical.  The costs incurred by parties to make the necessary proof in these cases will be substantially reduced if the cases are litigated in the same jurisdiction.  Thus, this factor weighs in favor of transfer.

### VII.  Advantages of Having Local Court Determine Questions of Local Law

"When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale."[80]  When considering this factor, the Tenth Circuit appears to

---

[77] 28 U.S.C. § 1963 reads: "A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district or, with respect to the Court of International Trade, in any judicial district, when the judgment has become final by appeal or expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown.  Such a judgment entered in favor of the United States may be so registered any time after judgment is entered.  A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."

[78] *Employers Mut. Cas. Co.*, 618 F.3d at 1169 (citations omitted).

[79] *See Motion* at 8–9 (citing Dkt. 48-6, *United States District Courts – National Judicial Caseload Profile*).

[80] *Employers Mut. Cas. Co.*, 618 F.3d at 1169–70 (citations omitted).

15

consider both the state substantive law governing the dispute and the state where the alleged injury occurred.[81] Here, the controversy is between a Utah limited liability company and an Oklahoma corporation. Sunstone asserts various federal and Utah claims against Pepetools for alleged misconduct occurring entirely in Oklahoma. Both Utah and Oklahoma appear to have an interest in the resolution of this case, and both districts are fully competent to apply Utah substantive law when necessary and adjudicate the matter. Indeed, all Utah-specific claims in this case have comparable parallels under federal law or Oklahoma law. This factor is neutral.

### VIII. Other Practical Considerations

Courts possess broad discretion to consider other factors of a practical nature that would make "litigation . . . more easy, expeditious, and economical . . . ."[82] Relevant here, "[c]ourts have recognized that the presence of an earlier-filed, related case in the transferee forum bears considerable weight in determining whether transfer is appropriate."[83] Indeed, district courts in the Tenth Circuit appear to agree that "the presence of a related case in the transferee forum is a powerful reason to grant a change of venue."[84] For example, one district court found transferring a case to another venue where a related case had been filed seven months prior would "save both judicial and party resources" as "[t]he same witnesses will likely be relevant to

---

[81] *See id.*

[82] *Id.* at 1170.

[83] *Thompson v. Nat'l Football League*, No. 1:13-CV-00367, 2014 WL 1646929, at *3 (W.D. Pa. Apr. 24, 2014); *see also Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent.").

[84] *Collier v. Am. Greetings Corp.*, No. 10-CV-625-JHP-FHM, 2012 WL 13020817, at *3 (N.D. Okla. June 19, 2012) (gathering citations), *report and recommendation adopted*, No. 10-CV-625-JHP-FHM, 2012 WL 13027384 (N.D. Okla. July 6, 2012);

both [actions]" and "proceeding with both actions in the same district would save witnesses from having to travel and testify in cases in two separate states."[85]

A review of the earlier-filed Oklahoma action and the present case reveals a substantial overlap between the two cases. The cases involve identical parties,[86] and the cases center on Pepetools' alleged infringement of Sunstone's intellectual property due to its offering for sale the Helix welder and other products.[87] Both cases concern the parties' distribution relationship,[88] Sunstone's attempts to formalize that relationship in a written agreement,[89] the inability of the parties to formalize their relationship,[90] and Pepetools' alleged misuse of Sunstone's trademarks and other intellectual property after the parties' relationship soured.[91] Moreover, recently exchanged Rule 26 disclosures in both cases reveal that virtually identical witnesses will testify in both trials.[92] Indeed, seventeen of Sunstone's eighteen total witnesses are identical in the two actions, and all twenty-two of Pepetools' witnesses are identical in the two actions.[93] These witnesses reside in Oklahoma, Utah, California, New Mexico, Idaho, Texas, Ohio, New Jersey,

---

[85] *Telecomm. Sys., Inc. v. TracBeam, L.L.C.*, No. 11-CV-02519-WYD-MJW, 2012 WL 371578, at *2 (D. Colo. Feb. 6, 2012).

[86] *Compare Second Amended Complaint*, *with Case No.: CIV-23-907-D Demand for Jury Trial*.

[87] *Compare Second Amended Complaint*, *with* Dkt. 48-1, *Case No.: CIV-23-907-D Demand for Jury Trial*.

[88] *Compare Second Amended Complaint* ¶¶ 45–48, *with Case No.: CIV-23-907-D Demand for Jury Trial* ¶¶ 8–10.

[89] *Compare Second Amended Complaint* ¶¶ 45–48, *with Case No.: CIV-23-907-D Demand for Jury Trial* ¶¶ 12–16.

[90] *Compare Second Amended Complaint* ¶ 46, *with Case No.: CIV-23-907-D Demand for Jury Trial* ¶¶ 16, 23.

[91] *Compare Second Amended Complaint*, *with Case No.: CIV-23-907-D Demand for Jury Trial* ¶¶ 36–37, *and* Dkt. 52-1, *Defendant's Answer, Affirmative Defenses, and Counterclaims* ¶¶ 78–80.

[92] *Motion* at 6.

[93] *Compare* Dkt. 48-2, *Defendant and Counterclaim Plaintiff's Rule 26(a)(1) Initial Disclosures*, *with* Dkt. 48-3, *Plaintiff's Rule 26(a)(1) Initial Disclosures*; *Compare* Dkt. 48-4, *Plaintiff/Counter-Defendant Pepe Tools, Inc.'s Initial Disclosures Pursuant to Fed. R. Civ. P. 26(A)(1)*, *with* Dkt. 48-5, *Defendant Pepe Tools, Inc.'s Initial Disclosures Pursuant to Fed. R. Civ. P. 26(A)(1)*.

and Canada.[94] It makes little sense to require the parties and these geographically diverse witnesses to expend substantial amounts of money to travel and appear in two different trials in two different states when a single forum is competent to resolve all the parties' claims. Duplicative litigation in two states would also waste judicial resources. These other practical factors weigh strongly in favor of transfer.

## CONCLUSION

Having reviewed the above-mentioned factors, the court concludes transfer is appropriate in this case. Pepetools' Motion[95] is GRANTED, and the case is hereby transferred to the Western District of Oklahoma for all further proceedings.

SO ORDERED this 25th day of March 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[94] *See Motion* at 6.

[95] Dkt. 48.